**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
MITCHELL GROUP USA LLC; and GAPARDIS
HEALTH AND BEAUTY, INC.,

          Plaintiffs,

          -against-

NKEM UDEH, individually and d/b/a "BEAUTY
RESOURCE", JOHN DOES 1-10; and UNKNOWN
ENTITIES 1-10,

          Defendants.

---------------------------------------------------------------- x

14-cv-5745 (DLI) (JO)

**DORA L. IRIZARRY, United States District Judge:**

### ORDER FOR CONSENT PRELIMINARY INJUNCTION, EXPEDITED DISCOVERY, TO UNSEAL THE ACTION AND USE SEIZED BUSINESS RECORDS IN FURTHERANCE OF THE ACTION

On October 1, 2014, the Court granted the *ex parte* request of Mitchell Group USA LLC and Gapardis Health and Beauty, Inc. (collectively, "Plaintiffs") for a temporary restraining order, expedited discovery to be scheduled by a magistrate judge, and an order of seizure of inventory and assorted business records, upon Plaintiffs' sworn allegations that Defendants were unlawfully infringing upon their trademark rights by selling counterfeit goods and other products bearing Plaintiffs' trademarks. The October 1 Order also directed Defendants to show cause at a hearing to be held before the Court on October 7, 2014, why a preliminary injunction should not issue and why the Court should not grant Plaintiffs the additional relief they requested.

On October 4, 2014, Plaintiffs executed the Order of Seizure of Inventory and Business Records. On October 7, 2014, Plaintiffs filed with the Court, *inter alia*, an inventory of the items seized pursuant to said seizure order.

On October 7, 2014, the Court held a hearing, at which Plaintiffs' counsel appeared and Defendant Nkem Udeh appeared *pro se*. No counsel appeared for Defendant Beauty Resource. At this hearing, Defendant Udeh consented to the entry of Plaintiffs' requested preliminary injunction.

Having duly considered the arguments and authority presented by Plaintiffs in their moving papers and all other subsequent filings pertaining to this matter, Plaintiffs' motion for a preliminary injunction, expedited discovery, use of seized business records, and to unseal this case is GRANTED.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Trademark infringement is defined as follows:

> "Any Person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive: or reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided."

15 U.S.C. §1114 (1)(a).

The test for determining whether a mark is a counterfeit is essentially the same as whether a suspect mark infringes a registered mark. *See Chauvin International Ltd. v. Goldwitz*, 832 F. Supp. 35 (D. Conn. 1993). The standard for determining whether a suspect mark infringes a registered mark is whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question

because of the entrance in the marketplace of defendant's mark." *Playtex Prods. v. Georgia-Pacific Corp.,* 390 F.3d 158, 161 (2d Cir. 2004). In order to determine whether a likelihood of confusion exists, courts in the Second Circuit apply the eight factor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). *Playtex Prods.*, 390 F.3d at 162. These factors include: (1) the strength of the plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. *Id.* Where items are counterfeit, however, "the Court need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion." *Gucci Am., Inc. v. DutyFree Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

To obtain a preliminary injunction in a trademark case a movant must demonstrate a likelihood of success on the merits, and that: (1) they are likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiffs for that injury; (3) the balance of hardships tips in plaintiffs' favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. See *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Plaintiffs presented sworn allegations of facts, supplemented by photographs, demonstrating that their investigator, Bradford Cole, visited Defendants' store and purchased unauthorized counterfeit products bearing the Plaintiffs' registered trademarks.

Following entry of the temporary restraining order ("TRO") on October 1, 2014, Plaintiffs, along with the U.S. Marshals Service, conducted seizures and served Defendants Nkem Udeh and Beauty Resource with the Complaint, TRO, Motion for Ex Parte Order, and supporting documents.

The following counterfeit goods were recovered:

| Product | Quantity |
| --- | --- |
| Lemonvate Cream 30 gram | 22 |
| Neoprosone Body Lotion 500 mL | 1 |
| Neoprosone Gel 30 gram | 40 |

Based on the findings following the seizure at the Defendants' location, as well as Plaintiffs' Complaint, Memorandum of Law in Support of the TRO under 15 U.S.C. § 1116 and supporting declarations, the Court finds that there is a substantial likelihood of success on the merits.

Although irreparable harm may not be presumed upon a showing of a likelihood of success, *see eBay,* 547 U.S. at 393; *Salinger,* 607 F.3d at 80, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011). Further, it has been

recognized that counterfeiting specifically may also lead to irreparable harm. "Injecting the market with counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law." *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, 2013 WL 5603602 (E.D.N.Y. Sept. 27, 2013) *report and recommendation adopted*, 2013 WL 5603596 (E.D.N.Y. Oct. 11, 2013).

The Court finds that there is irreparable injury to the Plaintiffs because Defendants have engaged in the act of selling goods bearing marks that are almost identical to Plaintiffs' marks, but not identical in composition or in warnings to consumers. Thus, Defendants' acts of selling these goods causes a likelihood of confusion and harm to Plaintiffs and the goodwill and reputation built in their trademarks. Such damage is neither precisely measurable, nor compensable.

The balance of hardships in the case also favors Plaintiffs. In weighing the hardships, hardship to a defendant based on his or her own wrongful acts is not legally cognizable. *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, 2014 WL 3887515 (E.D.N.Y. Aug. 5, 2014) ("Absent an injunction, there will be further erosion of plaintiff's good will and reputation. Defendants, on the other hand, will be called upon to do no more than refrain from what they have no right to do in the first place.") Here, the potential harm to the Defendants in restraining their trade in counterfeit products is outweighed by the potential harm to Plaintiffs' reputation and goodwill.

The public interest also favors a preliminary injunction to protect Plaintiffs' registered trademarks and to protect the public from being misled by the Defendants' sale of counterfeit and gray market goods. "Trademark laws exist to protect the public from

confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir. 2000). "[T]he public has an interest in not being deceived-in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *New York City Triathlon v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010). The public interest would not be disserved by enjoining Defendants' sale of unauthorized and counterfeit versions of Plaintiffs' products.

Based on the foregoing findings of fact, conclusions of law, and Defendant Udeh's consent,

IT IS HEREBY **ORDERED**, **ADJUDGED**, and **DECREED** that:

1) Pursuant to 15 U.S.C. §1116, the Defendants, Nkem Udeh and Beauty Resource, (collectively, "Defendants") their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from using on or in connection with the importation, sale, offering for sale, and distribution the NEOPROSONE and LEMONVATE Marks, the typestyle utilized by Plaintiffs in association with the NEOPROSONE and LEMONVATE Marks or any other trademarks or trade dress in combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiffs' trademarks and trade dress, specifically the NEOPROSONE and LEMONVATE Marks, as shown in U.S. Registration Nos.:

> 3,108,357 (NEOPROSONE)
> 3,457,390 (LEMONVATE)

distinctive designs, and packaging;

2) Pursuant to 15 U.S.C. §1125, 28 U.S.C. § 1651, and under the Court's

equitable powers under Fed. R. Civ. P. 65, the Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from using on or in connection with the importation, sale, offering for sale, and distribution the FAIR & WHITE and PARIS FAIR & WHITE Marks, the typestyle utilized by Plaintiffs in association with the FAIR & WHITE and PARIS FAIR & WHITE Marks or any other trademarks or trade dress in combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiffs' trademarks and trade dress, specifically the FAIR & WHITE and PARIS FAIR & WHITE marks, as shown in U.S. Registration Nos.:

> 2,839,374 (FAIR & WHITE)
> 2,497,918 (PARIS FAIR & WHITE)

distinctive designs, and packaging;

3) Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from destroying, altering, removing or secreting any books and records, including but not limited to invoices, purchase orders, receipts, banking records, safe deposit box records, shipping labels, or tax returns, including all records stored on computer discs or tapes or within computer terminals, hard drives, servers or otherwise, which contain any information whatsoever concerning the business or finances of any of the Defendants related to or otherwise reflecting transactions of any kind involving counterfeit, imitation, infringing, or other goods bearing Plaintiffs' NEOPROSONE, LEMONVATE, FAIR & WHITE, and PARIS FAIR

& WHITE marks, distinctive designs and packaging;

4) If, after this Order is served on them, Defendants or any of their agents, employees or others controlled by them or acting on their behalf or in concert with them, obtain the possession or presently are in the possession, custody or control of any additional quantity of the above-described items (e.g., counterfeit or imitation or materially different goods, business records, or computerized information), they will immediately notify the Plaintiffs' attorneys, and retain without sale or destruction, or other harm or transfer, such items until further Order of this Court; and

5) Upon Plaintiffs' application and pursuant to 15 U.S.C. § 1116(d)(8), the Clerk of the Court is directed to unseal the case.

Pursuant to 15 U.S.C. § 1116(d)(7), the Plaintiffs may use the records seized pursuant to this Court's October 1, 2014 Seizure Order in furtherance of the action, except insofar as they might colorably be claimed to be confidential, private, proprietary, or privileged. The accepted records are to be presented to the Court for appropriate rulings.

SO ORDERED.

DATED: Brooklyn, New York
October 7, 2014

_____/s/_____

DORA L. IRIZARRY
United States District Judge