## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MITCHELL GROUP USA LLC; and GAPARDIS HEALTH AND BEAUTY, INC., | |
| Plaintiffs, | Case Number: 14-cv-5745 |
| v. | Judge: Irizarry |
| NKEM UDEH, individually and d/b/a "BEAUTY RESOURCE"; TIMITE & SON BEAUTY SUPPLIES, INC.; WORLD BEAUTY DISTRIBUTOR, INC.; AFRICAN & CARIBBEAN MARKET, INC.; and JOHN DOES 1-10; and UNKNOWN ENTITIES 1-10, | Magistrate: Orenstein |
| Defendants. | |

## ORDER FOR A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Plaintiffs in the above-captioned action, Mitchell Group USA LLC ("MITCHELL GROUP") and Gapardis Health and Beauty, Inc. ("GAPARDIS") (collectively referred to herein as "Plaintiffs"), commenced this action on October 1, 2014, seeking temporary, preliminary and permanent injunctive relief, compensatory and statutory damages, and other equitable relief for Nkem Udeh, individually and d/b/a "Beauty Resource" ("Udeh Defendant") acts in violation of §§ 32, 34, and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116, 15 U.S.C. §1125(a).  On motion by the Plaintiffs, on October 1, 2014, the Court granted an *ex parte* Temporary Restraining Order, an Order to Show Cause for a Preliminary Injunction, Expedited Discovery and Order of Seizure of Inventory and Business Records ("TRO") against Udeh Defendant (D.E. #8).  On October 7, 2014, after a hearing on an order to show cause, the Court converted the TRO into a Consent Preliminary Injunction ("PI") against Udeh Defendant (D.E. #9).

On January 23, 2015, the Plaintiffs filed their amended complaint adding as defendants Timite & Son Beauty Supplies, Inc. and World Beauty Distributor, Inc. (together "Timite Defendants") and African & Caribbean Market, Inc. ("African & Caribbean Defendant") (collectively "Amended Defendants") (D.E. #22).  On February 4, 2015, the Court granted the request of Plaintiffs' for a Temporary Restraining Order and an Order to Show Cause why the Court's prior order of Preliminary Injunction should not be extended to the Amended Defendants, an Accounting, and Expedited Discovery, upon Plaintiffs' sworn allegations that Amended Defendants were unlawfully infringing upon their trademark rights by selling counterfeit goods and other products bearing Plaintiffs' trademarks.   The February 4, 2015 Order also directed Amended Defendants to show cause at a hearing to be held before the Court on February 17, 2015 why a preliminary injunction should not issue and why the Court should not grant Plaintiffs the additional relief they requested.

On February 17, 2015, the Court held at hearing, at which Plaintiffs' counsel and Defendant Nkem Udeh appeared pro se. *None of the Amended Defendants appeared at the hearing or otherwise complied with this Court's Feb. 4th Order. They have failed to provide good cause why this Court should NOT convert the* Having duly considered the arguments and authority presented by Plaintiffs in *Temporary Restraining Order* their moving papers and all other subsequent filings pertaining to this matter, Plaintiffs' *into a* motion for a preliminary injunction and expedited discovery is GRANTED. *Preliminary Injunction.*

The Court makes the following

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1.    Trademark infringement is defined as follows:

"Any Person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause

confusion, or to cause mistake, or to deceive: or reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided."

15 U.S.C. §1114 (1)(a).

The test for determining whether a mark is a counterfeit is essentially the same as whether a suspect mark infringes a registered mark. See *Chauvin International Ltd. v. Goldwitz*, 832 F. Supp. 35 (D. Conn. 1993). The standard for determining whether a suspect mark infringes a registered mark is whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Playtex Prods. v. Georgia-Pacific Corp.,* 390 F.3d 158, 161 (2d Cir. 2004). In order to determine whether a likelihood of confusion exists, courts in the Second Circuit apply the eight factor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). *Playtex Prods.*, 390 F.3d at 162. These factors include: (1) the strength of the plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. *Id.* Where items are counterfeit, however, "the Court need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion." *Gucci Am., Inc. v. DutyFree Apparel,*

3

*Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003). The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

2.     To obtain a preliminary injunction in a trademark case a movant must demonstrate a likelihood of success on the merits, and that: (1) they are likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiffs for that injury; (3) the balance of hardships tips in plaintiffs' favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *See Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir.2010) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).

3.     Plaintiffs presented sworn allegations of facts, supplemented by photographs, demonstrating that their investigator, Bradford Cole, visited Udeh Defendant's store and purchased unauthorized counterfeit products bearing the Plaintiffs' registered trademarks.

4.     Following entry of the temporary restraining order ("TRO") on October 1, 2014, Plaintiffs, along with the U.S. Marshals Service, conducted seizures and served Defendants Nkem Udeh and Beauty Resource with the Complaint, TRO, Motion for Ex Parte Order, and supporting documents.

The following counterfeit goods were recovered:

| Product | Quantity |
|---|---|
| Lemonvate Cream 30 gram | 22 |
| Neoprosone Body Lotion 500 mL | 1 |

| Neoprosone Gel 30 gram | 40 |
|---|---|
| Carotis Soap 200 gram | 8 |

5.      In addition to the counterfeit goods, Plaintiffs' seized sales record notebooks and assorted business records that contained references to Plaintiffs' trademarks and revealed some of the suppliers of the counterfeit and materially different infringing products.   Pursuant to this Court's Order granting Plaintiffs' motion for expedited discovery, Plaintiffs obtained further discovery from Udeh Defendant that confirmed the identities of the distributor and/or suppliers of the counterfeit products.

6.      Plaintiffs presented invoices and purchase orders seized and produced by Udeh Defendant  that demonstrate the following counterfeit and materially different infringing products were supplied by the Amended Defendants as follows:

| Amended Defendant | Plaintiff's Trademark Infringed |
|---|---|
| African & Caribbean Defendant | NEOPROSONE, LEMONVATE, CAROTIS, FAIR & WHITE |
| Timite Defendants | LEMONVATE |

7.      Plaintiffs presented sworn allegations of facts demonstrating that their investigator, Bradford Cole, visited the retail location for African & Caribbean Defendant and purchased a gray market product bearing the Plaintiffs' FAIR & WHITE marks.

8.      Based on the findings following the seizure at the Udeh Defendants' location, as well as Plaintiffs' Amended Complaint and Memorandum of Law in Support of the TRO under 15 U.S.C. § 1116 and supporting declarations, I find that there is a likelihood of success on the merits.

9.      Although irreparable harm may not be presumed upon a showing of a likelihood of success, *see eBay*, 547 U.S. at 393, 126 S.Ct. 1837; *Salinger*, 607 F.3d at 80, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540 (S.D.N.Y.2011). Further, it has been recognized that counterfeiting specifically may also lead to irreparable harm. "Injecting the market with counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law." *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, 13-CV-4974, 2013 WL 5603602 (E.D.N.Y. Sept. 27, 2013) report and recommendation adopted, 13-CV-4974, 2013 WL 5603596 (E.D.N.Y. Oct. 11, 2013).

10.     The Court finds that there is irreparable injury to the Plaintiffs because Defendants have engaged in the act of selling goods bearing marks that are almost identical to Plaintiffs' marks. Thus, Defendants' acts of selling these goods causes a likelihood of confusion and harm to Plaintiffs and the goodwill and reputation built in their trademarks. Such damage is neither precisely measurable, nor compensable.

11.     The balance of hardships in the case also favors Plaintiffs. In weighing the hardships, hardship to a defendant based on his or her own wrongful acts is not legally cognizable. *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, 13-CV-2451, 2014 WL 3887515 (E.D.N.Y. Aug. 5, 2014) ("Absent an injunction, there will be further erosion of plaintiff's good will and reputation. Defendants, on the other hand, will be

called upon to do no more than refrain from what they have no right to do in the first place.")

12. Here, the potential harm to the Defendants in restraining their trade in counterfeit products is outweighed by the potential harm to Plaintiffs' reputation and goodwill.

13. The public interest also favors a preliminary injunction to protect Plaintiff's registered Trademarks and to protect the public from being misled by the Defendants' sale of counterfeit and gray market goods. "Trademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir.2000). "[T]he public has an interest in not being deceived-in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *New York City Triathlon v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305 (S.D.N.Y.2010). The public interest would not be disserved by enjoining Defendants' sale of unauthorized and counterfeit versions of Plaintiffs' products.

Based on the Findings of Fact and Conclusions of Law,

IT IS THEREFORE **ORDERED**, **ADJUDGED**, and **DECREED**:

**As to Timite Defendants:**

1. That, pursuant to 15 U.S.C. §1116, the Timite Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from using on or in connection with the importation, sale, offering for sale, and distribution the LEMONVATE Mark, the typestyle utilized by Plaintiffs in association with the LEMONVATE Mark or any other trademarks or trade dress in

combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiffs' trademarks and trade dress, specifically the LEMONVATE Mark, as shown in U.S. Registration Nos.:

3,457,390 (LEMONVATE)

distinctive designs, and packaging, and further,

2.      That, Timite Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from destroying, altering, removing or secreting any books and records, including but not limited to invoices, purchase orders, receipts, business banking records, investment records, or shipping labels, including all records stored on computer discs or tapes or within computer terminals, hard drives, servers or otherwise, which contain any information whatsoever concerning the business or finances of any of the Amended Defendants related to or otherwise reflecting transactions of any kind involving counterfeit, imitation, infringing, or other goods bearing Plaintiffs' LEMONVATE mark, distinctive designs and packaging, and further,

**As to African and Caribbean Defendant:**

3.      That, pursuant to 15 U.S.C. §1116, the African and Caribbean Defendant, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from using on or in connection with the importation, sale, offering for sale, and distribution the NEOPROSONE, LEMONVATE and CAROTIS Marks, the typestyle utilized by Plaintiffs in association with the NEOPROSONE,

8

LEMONVATE and CAROTIS Marks or any other trademarks or trade dress in combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiffs' trademarks and trade dress, specifically the NEOPROSONE, LEMONVATE and CAROTIS Marks, as shown in U.S. Registration Nos.:

> 3,108,357 (NEOPROSONE)
> 3,457,390 (LEMONVATE)
> 2,680,543 (CAROTIS)

distinctive designs, and packaging, and further

4.   That, pursuant to 15 U.S.C. §1125, 28 U.S.C. § 1651, and under the Court's equitable powers under Fed. R. Civ. P. 65, the African and Caribbean Defendant, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from using on or in connection with the importation, sale, offering for sale, and distribution the FAIR & WHITE and PARIS FAIR & WHITE Marks, the typestyle utilized by Plaintiffs in association with the FAIR & WHITE and PARIS FAIR & WHITE Marks or any other trademarks or trade dress in combination with other words or symbols, or any other marks or symbols which are confusingly or deceptively similar to, or colorably imitative of Plaintiffs' trademarks and trade dress, specifically the FAIR & WHITE and PARIS FAIR & WHITE marks, as shown in U.S. Registration Nos.:

> 2,839,374 (FAIR & WHITE)
> 2,497,918 (PARIS FAIR & WHITE)

distinctive designs, and packaging, and further,

5.   That, African and Caribbean Defendant, their agents, employees, affiliates,

and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby enjoined and restrained from destroying, altering, removing or secreting any books and records, including but not limited to invoices, purchase orders, receipts, business banking records, investment records, or shipping labels, including all records stored on computer discs or tapes or within computer terminals, hard drives, servers or otherwise, which contain any information whatsoever concerning the business or finances of any of the Amended Defendants related to or otherwise reflecting transactions of any kind involving counterfeit, imitation, infringing, or other goods bearing Plaintiffs' NEOPROSONE, LEMONVATE, CAROTIS, FAIR & WHITE, and PARIS FAIR & WHITE marks, distinctive designs and packaging, and further,

**As to All Amended Defendants:**

6.    That if, after this Order is served on them, Amended Defendants or any of their agents, employees or others controlled by them or acting on their behalf or in concert with them, obtain the possession or presently are in the possession, custody or control of any of the above-described items (e.g., counterfeit or imitation or materially different goods, business records, or computerized information), they will immediately notify the Plaintiffs' attorneys, and retain without sale or destruction, or other harm or transfer, such items until further Order of this Court; and further,

7.    That, Plaintiffs are granted expedited discovery which shall be scheduled by a Magistrate Judge; and further,

8.    That, pursuant to Federal Rule 65(c), Plaintiffs shall continue to maintain the bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) that is

currently on deposit with Court, as payment of damages to which the Amended Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this Action, or until further Order of the Court.

SO ORDERED, this ___17th___ day of February, 2015, at 11:42 (AM) PM.

S/ Dora L. Irizarry

_____
United States District Judge

11