FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 28 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

MITCHELL GROUP USA, LLC and
GAPADIS HEALTH AND BEAUTY INC.,

Plaintiffs,

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

- against -

14 Civ. 5745 (AMD)

NKEM UDEH, individually and d/b/a/ "BEAUTY RESOURCE," TIMITE & SON BEAUTY SUPPLIES, INC., AFRICAN & CARIBBEAN MARKET, INC., and JOHN DOES 1-10 and UNKNOWN ENTITIES 1-10.

Defendants.

---------------------------------------------------------------- X

**ANN M. DONNELLY,** District Judge.

Before the Court are the parties' objections to the Report and Recommendation ("R & R") that Magistrate Judge James Orenstein issued on March 8, 2017, recommending that the Court award the plaintiffs $203,227.70 in damages and enter a permanent injunction against the defendants. For the reasons set forth below, I adopt Judge Orenstein's thorough and well-reasoned R & R.

## BACKGROUND

The plaintiffs, Mitchell Group USA LLC ("Mitchell") and Gapadis Health and Beauty, Inc. ("Gapardis"), initiated this action against the defendants, Timite & Son Beauty Supplies,

1

Inc. ("Timite") and World Beauty Distributor, Inc. ("World"),[1] asserting trademark infringement, counterfeiting, unfair competition, and false advertising under the federal Lanham Act and New York common law. (Second Amended Complaint, ECF 55.) After the defendants willfully failed to comply with multiple court orders, the court held them in contempt and ordered their answer stricken from the record. (ECF 80, *aff'd*, Order dated June 16, 2015; ECF 100, *adopted*, ECF 117; ECF 121.)

On April 26, 2016, the plaintiffs filed a motion for default judgment, (ECF 141) which I referred to Judge Orenstein, pursuant to 28 U.S.C. § 636(b). Judge Orenstein recommended that the Court enter judgment against the defendants "jointly and severally in the amount of $203,227.70 (consisting of $100,000 in statutory damages; $95,627.20 in attorney's fees; and $7,600.50 in costs), and issue a permanent injunction." (R & R, ECF 168, at 1.) Both parties filed timely objections to the R & R on April 19, 2017. (ECF 171, 172.)

## DISCUSSION

### I. Standard of Review

A party may object to a magistrate judge's R & R within 14 days. Fed. R. Civ. P. 72(b)(1). The objections must be specific; where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the [R & R] only for clear error." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie*, No. 96 Civ. 324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). The district judge must evaluate proper objections *de novo* and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3). "[E]ven in a de novo review of a party's specific objections, [however,] the court will not consider 'arguments, case law and/or evidentiary

---

[1] "The plaintiffs also sued Nkem Udeh ("Udeh") and African & Caribbean Market, Inc. ("ACM"), but have since settled with each." (ECF 168, at. 2; *see* ECF 127; ECF 139.)

2

material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Brown v. Smith*, No. 09 Civ. 4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 15, 2012) (quoting *Kennedy v. Adamo*, No. 02 Civ. 1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)) (alterations omitted). Moreover, "the district court is 'permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections are not facially erroneous.'" *Sasmor v. Powell*, No. 11 Civ. 4645, 2015 WL 5458020, at *2 (E.D.N.Y. Sept. 17, 2015) (quoting *Batista v. Walker*, No. 94 Civ. 2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995)).

## II. Defendants' Objections

The defendants make the same arguments they made in their memorandum opposing the plaintiffs' motion for default judgment, which Judge Orenstein already considered and rejected. Accordingly, the Court reviews that part of the R & R for clear error. *See, e.g., Official Comm. of Unsecured Creditors of Exeter Holdings Ltd. v. Haltman*, No. 13 Civ. 5475, 2016 WL 128154, at *5 (E.D.N.Y. Jan. 12, 2016) (objections to an R & R that are identical to those put forth in motion papers are reviewed for clear error). Having reviewed Judge Orenstein's cogent analysis, the available record, and relevant case law, I find no clear error in his recommendation that default judgment be entered against the defendants.

## III. Plaintiffs' Objections

The plaintiffs object to Judge Orenstein's recommendation that this Court enter a judgment against the defendants for $100,000 in statutory damages; they argue this amount is insufficient because it does not include damages for (1) the defendants' use of the "Fair & White" and "Paris Fair & White" marks or (2) false advertising of products bearing the plaintiffs' "Maxi Skin," "Pure Skin," or "Immediate Claire Maxi-Beauty" marks. These

3

objections are sufficiently specific to warrant de novo review. *See* 28 U.S.C. § 636(b)(1) ("A [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

Under 15 U.S.C. § 1117(c), a plaintiff may recover statutory damages for trademark infringement involving the use of counterfeit marks. In other cases of trademark infringement, plaintiffs are entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117 (a). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true[;] [t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (internal citations omitted).

    a. <u>Damages for the Gray Market Products</u>

        i. Statutory Damages for Gray Market Products

In this case, "[t]he defendants did not use counterfeit marks in the course of infringing the 'Fair & White' and 'Paris Fair & White' marks;" thus, Judge Orenstein found that the plaintiffs may "only recover actual damages and the defendants' profits to the extent they can ascertain either to a reasonable certainty." (R & R, ECF 168, at 9-12.) The plaintiffs argue that they are, in fact, entitled to statutory damages "because the products, while not technically 'counterfeit' are also not genuine products for sale in the United States." (Pl. Objections, ECF 172, at 4.) As the plaintiffs themselves note, however, "trademark infringement involv[ing] claims of gray market or parallel imports . . . are not subject to statutory damages," (*Id.* at 5) and neither the plaintiffs nor the Court have identified any case law to the contrary. Moreover, the Lanham Act explicitly provides for statutory damages for counterfeit goods but does not mention statutory

4

damages for gray market goods. *See* 15 U.S.C. § 1117(c) (2008). This statutory omission further underscores the correctness of Judge Orenstein's finding that the plaintiffs are not entitled to statutory damages for the infringing gray market products.[2]

>   ii. Actual Damages and Profits

The plaintiffs also argue that even if they are not entitled to statutory damages, their proposed calculations allow them to ascertain the defendants' profits with reasonable certainty. The plaintiffs obtained the defendants' sales invoices for all of 2013, the first eight months of 2014, and the first five months of 2015, which respectively totaled $111,439.48, $82,770.95, and $260,110.28. (R & R at 11.) The plaintiffs argue that they can estimate the defendants' total yearly sales based on these invoices. I agree with Judge Orenstein's reasoning that this method of calculation does not enable the Court to determine "the defendants' profit margins or even the proportion of their sales attributable to products with the pertinent [Fair & White] marks," because the invoices also include sales of non-infringing products. (ECF 168, at 11.)

Moreover, I cannot rely on the estimate made by Mitchell's Director of Operations, Lucien Chidiac, that the defendants grossed "at least $500,000" on sales of the infringing products because that estimate is not supported by the sales invoices in evidence. As Judge Orenstein found, averaging the sales records "produces an annualized total of $218,073.94—less than half of Chidiac's projection." (*Id.*) Accordingly, Chidiac's estimate of both the defendants' gross sales and the plaintiffs' actual damages is implausible.

For these reasons, I adopt Judge Orenstein's recommendation that the plaintiffs should not be awarded damages for the defendants' use of the "Fair & White" marks.

---

[2] The plaintiffs further argue that declining to award statutory damages would contradict the intent of the Lanham Act by rewarding the defendants for withholding information. (Pl. Objections at 4.) The plaintiffs, however, rely on cases that refer exclusively to statutory damages for counterfeit products; as discussed, the plaintiffs cannot recover statutory damages under the Lanham Act for sales of gray market goods. Accordingly, this argument is unavailing.

b. False Advertising

The plaintiffs also object to Judge Orenstein's recommendation that they should not receive damages for false advertising of competing products.[3] Judge Orenstein found a "discrepancy" between "the plaintiffs' pleading and their proof." (R&R at 15.) While the plaintiffs identified only the three products in their complaint—products bearing the "Maxi Light," "Pure Skin," and "Immediate Claire Maxi-Beauty" marks—they submitted proof regarding the sale of 11 different products. (*Id.*) As a matter of law, a plaintiff pursuing a default judgment cannot recover anything other than what was initially requested in the pleadings. *See* Fed. R. Civ. P. 54(c). Accordingly, I agree with Judge Orenstein's recommendation that the plaintiffs should not recover damages for the products that the plaintiffs did not identify in their original complaint.

Moreover, as discussed above, the plaintiffs' proposed damages calculation is speculative. They rely on incomplete sales records, and do not include information about the defendants' profit margins or the percentage of sales attributable to the products bearing the infringing marks. Thus I agree with Judge Orenstein's that the plaintiffs should not receive damages for false advertising of products bearing the "Maxi Light," "Pure Skin," and "Immediate Claire Maxi-Beauty" marks because they cannot ascertain the defendants' profits from the sales of these products with reasonable certainty.

c. Attorneys' Fees & Costs

---

[3] I part company with Judge Orenstein in only one respect—whether the Maxi Light, Pure Skin, and Immediate Claire Maxi-Light products were sold in the United States. Judge Orenstein found that "the defendants failed in their attempt to import those products, and therefore never profited by selling them." (R&R, ECF 168 at 15.) Along with their motion for default judgment, however, the plaintiffs submitted sales records showing that the defendants successfully sold products bearing the infringing marks in the United States from 2013 to 2015. (Pl. Objections to R&R, ECF 172 at 12; Pl. Mot. for Default Judgment, ECF 141-1 at 36-37.) For this reason, I respectfully disagree with Judge Orenstein's finding that products bearing the "Maxi Light," "Pure Skin," and "Immediate Claire Maxi-Beauty" marks were not sold in the Unites States. This issue is immaterial, however, because the evidence is not sufficient to calculate a reasonable award of damages.

Finally, the plaintiffs do not object to the recommendation that the defendants pay $95,627.20 in attorney's fees and $7,600.50 in costs or that the Court enter a permanent injunction against the defendants. Finding no clear error in Judge Orenstein's reasoning, I adopt these portions of the R & R in their entirety. *Official Comm. of Unsecured Creditors of Exeter Holdings Ltd. v. Haltman*, No. 13 Civ. 5475, 2016 WL 128154, at *5 (E.D.N.Y. Jan. 12, 2016).

## CONCLUSION

Upon careful review of the party's objections, the record, and Judge Orenstein's well-reasoned R & R, I hereby adopt and affirm the R & R over the parties' objections. I respectfully ask the Clerk of Court to enter judgment in favor of the plaintiffs for $203,227.70 and a permanent injunction against the defendants.

**SO ORDERED.**

S/ AMD
_____
The Honorable Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
       July 27, 2015

7